No. 25-4235

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

DANIEL J. WRIGHT,

Plaintiff-Appellant,

v.

JPMORGAN CHASE & CO., ET AL.,

Defendants-Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
Case No. 2:25-cv-00525-JLS-JC
The Honorable Josephine L. Staton

---

**APPELLANT'S REPLY BRIEF**

---

**HAFFNER LAW PC**
Joshua H. Haffner (SBN 188652)
   jhh@haffnerlawyers.com
Alfredo Torrijos (SBN 222458)
   at@haffnerlawyers.com
Vahan Mikayelyan (SBN 337023)
   vh@haffnerlawyers.com
15260 Ventura Blvd., Suite 1520
Sherman Oaks, CA 91403
Tel: (213) 514-5681

**SETAREH LAW GROUP**
Shaun C. Setareh (SBN 204514)
   shaun@setarehlaw.com
Thomas A. Segal (SBN 222791)
   thomas@setarehlaw.com
420 N. Camden Drive, Suite 100
Beverly Hills, CA 90210
Tel: (310) 888-7771

*Attorneys for Plaintiff-Appellant*
*Daniel J. Wright*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................**i**

TABLE OF AUTHORITIES .........................................................**iv**

INTRODUCTION.......................................................................**1**

ARGUMENT .............................................................................**3**

    I.    THE PLAN, READ AS A WHOLE, AFFORDED THE
        FIDUCIARY DISCRETION TO DIRECT FORFEITURES TO
        PLAN EXPENSES THAT WOULD OTHERWISE BE
        CHARGED TO PARTICIPANT ACCOUNTS. .............................**3**

        A.    Section 4.6 Itself Provides Two Authorized Uses – Neither
              Mandated Over the Other........................................................**4**

        B.    Section 6.9 Confirms the Mechanism for Using Forfeitures
              to Offset Participant Charges. .................................................**5**

        C.    Sections 12.10, 13.3, and 14.1 Reinforce the Correct
              Reading. ..................................................................................**6**

        D.    At Minimum, Ambiguity Must Be Resolved Against
              JPMorgan at the Pleading Stage. ............................................**7**

    II.    JPMORGAN ACTED AS A FIDUCIARY WHEN IT CHOSE
        HOW TO ALLOCATE FORFEITED PLAN ASSETS, AND
        ERISA'S DUTIES GOVERNED THAT CHOICE. .........................**7**

        A.    The Fiduciary Character of the Forfeiture Allocation
              Decision Is Conceded. ............................................................**7**

        B.    The DOL's Settlor Argument Conflates Two Separate
              Decisions..................................................................................**8**

        C.    The Plan Here Is Materially Different from Hutchins II. ........**9**

    III.    TAX REGULATIONS AND THE DOL'S VIEWS DO NOT
        IMMUNIZE JPMORGAN FROM ERISA LIABILITY...................**10**

i

A.  The Treasury Regulation JPMorgan Relies On Does Not Apply to This Plan. ...................................................10

B.  *Fifth Third Bancorp* Forecloses the "Regulatory Approval Equals ERISA Compliance" Argument..................................11

C.  The Chamber's Section 514(d) Argument Fails......................11

D.  The DOL's View Is Not Binding............................................12

IV.  THE COMPLAINT PLAUSIBLY ALLEGES BREACH OF THE DUTIES OF LOYALTY AND PRUDENCE....................................13

A.  *Anderson v. Intel* Is Under Active Supreme Court Review.....13

B.  The Complaint Plausibly Alleges Breach of the Duty of Loyalty. .............................................................................13

C.  The Complaint Plausibly Alleges Breach of the Duty of Prudence.............................................................................15

D.  The DOL's "Funding Shortfall" Argument Is Speculative and Self-Defeating. ..............................................................16

E.  Wright Does Not Assert a Categorical Rule; JPMorgan Does....................................................................................17

V.  THE MONITORING CLAIM SURVIVES WITH THE UNDERLYING BREACH CLAIMS. ................................................18

VI.  THE COMPLAINT PLAUSIBLY ALLEGES A PROHIBITED TRANSACTION....................................................................18

A.  Section 1106(b)(1)'s "Deal With" Language Does Not Require a Formal Transaction..................................................18

B.  Alternatively, the Conduct Constitutes a Prohibited "Use" Under Section 1106(a)(1)(D)..................................................20

VII.  THE ANTI-INUREMENT CLAIM IS VIABLE BECAUSE HUGHES AIRCRAFT DOES NOT APPLY TO DEFINED CONTRIBUTION PLANS. ................................................................20

ii

VIII. LEAVE TO AMEND SHOULD BE GRANTED ON REMAND..................................................................21

IX. THE ARGUMENTS OF THE AMICI SHOULD BE REJECTED. ..........................................................23

**CONCLUSION**.....................................................................**23**

**CERTIFICATE OF COMPLIANCE FOR BRIEFS** ......................**25**

**CERTIFICATE OF SERVICE** ..................................................**26**

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Alexander v. Primerica Holdings, Inc.*
  967 F.2d 90 (3d Cir. 1992) ............................................................5

*Anderson v. Intel Corp. Inv.*
  2026 WL 120679 (U.S. Jan. 16, 2026)........................................13

*Anderson v. Intel Corp. Inv. Pol'y Comm.*
  137 F.4th 1015 (9th Cir. 2025) ............................................. 13, 16

*ASARCO, LLC v. Union Pac. R.R. Co.*
  765 F.3d 999 (9th Cir. 2014) .........................................................7

*Buescher v. N. Am. Lighting, Inc.*
  791 F. Supp. 3d 873 (C.D. Ill. 2025)...........................................13

*Cunningham v. Cornell Univ.*
  604 U.S. 693 (2025).....................................................................19

*Dupree v. Holman Prof'l Counseling Ctrs.*
  572 F.3d 1094 (9th Cir. 2009) .......................................................4

*Fifth Third Bancorp v. Dudenhoeffer*
  573 U.S. 409 (2014)............................................................. passim

*Foman v. Davis*
  371 U.S. 178 (1962).....................................................................21

*Heet v. Nat'l Med. Care Inc.*
  2026 WL 353317 (D. Mass. Feb. 9, 2026)...................................13

*Howard v. Shay*
  100 F.3d 1484 (9th Cir. 1996) .....................................................14

*Hughes Aircraft Co. v. Jacobson*
  525 U.S. 432 (1999)............................................................ 9, 10, 20

iv

*Hughes v. Nw. Univ.*
    595 U.S. 170 (2022)............................................................... 1, 16, 18

*Hutchins v. HP Inc.*
    737 F.Supp.3d 851 (N.D. Cal. 2024).................................. 9, 10, 22

*Hutchins v. HP Inc.*
    767 F.Supp.3d 912 (N.D. Cal. 2025).............................................9

*Johnson v. American United Life Ins. Co.*
    716 F.3d 813 (4th Cir. 2013) .......................................................5

*Leigh v. Engle*
    727 F.2d 113 (7th Cir. 1984) .....................................................14

*Loomis v. Exelon Corp.*
    658 F.3d 667 (7th Cir. 2011) .......................................................9

*Loper Bright Enterprises v. Raimondo*
    603 U.S. 369 (2024).....................................................................12

*McManus v. Clorox Co.*
    2025 WL 732087 (N.D. Cal. Mar. 3, 2025) .................................. 12, 16, 22

*Meiners v. Wells Fargo & Co.*
    898 F.3d 820 (8th Cir. 2018) .....................................................16

*N.L.R.B. v. Amax Coal Co.*
    453 U.S. 322 (1981)....................................................................14

*Parker v. Tenneco, Inc.*
    2025 WL 1173011 (E.D. Mich. Apr. 22, 2025) ............................12

*Perez-Cruet v. Qualcomm Inc.*
    2024 WL 2702207 (S.D. Cal. 2024)................................... 4, 12, 20

*Randall ex rel. Wells Fargo & Co. 401(k) Plan v. GreatBanc Tr. Co.*
    2024 WL 713997 (D. Minn. Feb. 21, 2024)................................20

v

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*
    541 U.S. 1 (2004).................................................................21

*Richardson v. Pension Plan of Bethlehem Steel Corp.*
    112 F.3d 982 (9th Cir. 1997) ...........................................5

*Rodriguez v. Intuit Inc.*
    744 F.Supp.3d 935 (N.D. Cal. 2024)......................... 4, 12, 20

*Russell v. Ill. Tool Works Inc.*
    2026 WL 332662 (N.D. Ill. Feb. 9, 2026) .......................13

*Russello v. United States*
    464 U.S. 16 (1983).........................................................19

*Skilstaf, Inc. v. CVS Caremark Corp.*
    669 F.3d 1005 (9th Cir. 2012) ..........................................7

*United States v. Wong Kim Bo*
    472 F.2d 720 (5th Cir. 1972) ...........................................19

*Wright v. Oregon Metallurgical Corp.*
    360 F.3d 1090 (9th Cir. 2004) .........................................19

## **Statutes**

29 U.S.C. § 1002(14) .............................................................20

29 U.S.C. § 1002(34) .............................................................21

29 U.S.C. § 1103(c)(1)...................................................... 14, 21

29 U.S.C. § 1104(a)(1)(A) .....................................................13

29 U.S.C. § 1106(a) ...............................................................18

29 U.S.C. § 1106(b)(1)...........................................................19

29 U.S.C. § 1144(d) ...............................................................11

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6)...............................................................................7

Fed. R. Civ. P. 15(a)(2)...............................................................................21

# INTRODUCTION

For four consecutive years – 2020 through 2023 – JPMorgan Chase directed tens of millions of dollars in forfeited plan assets to one destination and one destination only: the reduction of its own mandatory contribution obligations. Not once, across four years, did it redirect a single dollar to reduce the administrative costs borne directly by its employees' retirement accounts. The amounts were not trivial: $9.2 million in 2020; $7.5 million in 2021; $13.0 million in 2022; $15.0 million in 2023. The pattern was unbroken. The beneficiary was always JPMorgan.

ERISA does not permit a fiduciary with a structural financial conflict to exercise discretion over plan assets without genuine consideration of participants' interests. That is not a novel proposition. It is the foundation of the fiduciary framework the Supreme Court has repeatedly enforced — most recently in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), and *Hughes v. Northwestern University*, 595 U.S. 170 (2022). The Complaint alleges that JPMorgan violated that framework.

The district court dismissed this case because it concluded the Plan language foreclosed any choice. That was error. Section 4.6 of the Plan expressly authorizes two uses for forfeitures – reducing employer contributions or offsetting plan expenses – connected by a disjunctive "or" that, as a matter of basic contract

and statutory interpretation, confers a choice. Section 6.9 provides the operational mechanism for the expense-reduction path. Sections 12.10, 13.3, and 14.1 reinforce it. The Plan's own 2023 Form 5500 confirms that the expense use was available and recognized. There was a choice. JPMorgan made it, every year, in its own favor.

JPMorgan and its amici press three arguments in response. First, that the Plan gives no discretion. Second, that decades of regulatory practice confirm the outcome was permissible regardless. Third, that Wright's theory collapses into an unworkable categorical rule that forfeitures must always fund plan expenses. None holds up.

On plan language: the word "shall" in Section 4.6 compels the fiduciary to apply forfeitures to one of two listed purposes – it says nothing about which one. The disjunctive "or" is not surplusage; it is the grant of choice. A fiduciary is not required to select the employer-favoring option simply because it appears first. And if any ambiguity remains, it cannot be resolved against the non-movant on a motion to dismiss.

On regulatory compliance: Treasury Regulation § 1.401-7(a) – JPMorgan's foundational authority – expressly applies to "pension plans" providing "definitely determinable benefits." This is a defined contribution profit-sharing plan. The regulation does not apply by its own terms. Even if it did, *Fifth Third Bancorp*

2

holds that regulatory permission does not substitute for fiduciary process. A fiduciary who acts with a structural financial conflict and never considers whether participants would be better served has not discharged ERISA's duty of loyalty – no matter what the tax code permits.

On the categorical rule: Wright has never argued that forfeitures must always fund plan expenses. He argues that a fiduciary exercising discretion over trust assets must do so with loyalty and prudence, which requires actually weighing whether participants would be better served by the available alternative. It is JPMorgan that asserts a categorical rule: that the employer-favoring use is always permissible, regardless of process. That is the categorical rule *Fifth Third Bancorp* and *Hughes v. Northwestern* forbid – and the rule the district court endorsed while accusing Wright of proposing one.

The district court's contrary ruling should be reversed.

## ARGUMENT

### I.  THE PLAN, READ AS A WHOLE, AFFORDED THE FIDUCIARY DISCRETION TO DIRECT FORFEITURES TO PLAN EXPENSES THAT WOULD OTHERWISE BE CHARGED TO PARTICIPANT ACCOUNTS.

The threshold question is whether the Plan gave JPMorgan a genuine choice over forfeiture allocation. If it did, ERISA's fiduciary framework governs that choice. If it did not, the analysis ends there. The district court concluded it did not, focusing on Section 4.6 alone. That was error.

3

**A. Section 4.6 Itself Provides Two Authorized Uses – Neither Mandated Over the Other.**

Section 4.6 provides that forfeitures "shall reduce future contributions of the Participating Company from which the forfeited contribution originated or such Participating Company's share of Plan expenses not paid directly by the Plan." ER-53. JPMorgan reads the word "shall" as rendering this list exhaustive and exclusive. AB at 14–15. But "shall" requires the fiduciary to apply forfeitures to one of the listed uses – it says nothing about which one. The provision itself confirms this: it offers two alternatives connected by "or." The disjunctive is not a formality. It is the choice. If no choice existed, "or" would be surplusage – a result courts avoid. *Dupree v. Holman Prof'l Counseling Ctrs.*, 572 F.3d 1094, 1097 (9th Cir. 2009).

JPMorgan tries to distinguish this Plan from those in *Rodriguez v. Intuit Inc.*, 744 F.Supp.3d 935 (N.D. Cal. 2024), and *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207 (S.D. Cal. 2024), by noting those plans explicitly mentioned "Plan expenses" as a forfeiture use. AB at 15–16. But Section 4.6 of this Plan says exactly that – "Plan expenses not paid directly by the Plan." The distinction JPMorgan draws is illusory.

4

**B.    Section 6.9 Confirms the Mechanism for Using Forfeitures to Offset Participant Charges.**

JPMorgan quotes from Section 6.9 but omits the sentence that matters most. The section provides *first* that administrative costs "may be charged to the Accounts of each Participant." ER-64.  It *then* provides: "Notwithstanding the above, the Bank may at its discretion elect to pay, or cause to be paid by the Participating Companies, any of such costs, fees, and expenses." *Id.* That sentence is immediately followed by language cross-referencing Section 4.6: forfeitures "may reduce the share of Plan expenses of a Participating Company [or] the Bank's share of Plan expenses not paid directly by the Plan." *Id*.

The mechanism works in three steps: (1) administrative costs are assessed against participant accounts by default; (2) the Bank elects to assume those costs, converting them from participant-borne to employer-borne; (3) forfeitures then offset the Bank's share of those now-employer-borne costs under Section 4.6's express authority.  Reading Sections 4.6 and 6.9 in isolation – as JPMorgan does – renders the cross-reference in Section 6.9 meaningless.  Reading them together – as plan interpretation requires – reveals exactly the mechanism Wright alleges. See *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997); *Johnson v. American United Life Ins. Co.*, 716 F.3d 813, 820 (4th Cir. 2013) ("'ERISA plans, like contracts, are to be construed as a whole'") (quoting *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 93 (3d Cir. 1992)).

JPMorgan also overlooks that the Plan's own 2023 Form 5500 disclosures state that forfeitures were used to reduce matching contributions "and/or plan expenses that otherwise would have been paid directly by a contributing employer." ER-277. The expense side of the Section 4.6 "or" is not illusory – JPMorgan's own filings confirm it.

### C.    Sections 12.10, 13.3, and 14.1 Reinforce the Correct Reading.

Section 12.10 of the Plan provides that "[a]ny Named Fiduciary may defray the reasonable expenses that it may incur in the administration of the Plan from the assets of the Plan unless such expenses shall be paid by the Bank or other Employer." ER-95. Plan assets include forfeitures. Reading Section 4.6 to categorically exclude forfeitures from this expense-defraying mechanism would render Section 12.10 superfluous as applied to forfeitures.

JPMorgan does not respond to the Opening Brief's argument that Sections 13.3 and 14.1 further support Wright's reading. OB at 21. Section 13.3 requires that trust assets be used "for the exclusive benefit of Participants, Former Participants, and Beneficiaries" unless used "for the payment of expenses of the Plan or the Trust." ER-96. Section 14.1 prohibits reversion of trust assets to the Bank except for taxes and "administration expenses or fees." ER-97. These provisions identify two legitimate non-participant uses of trust assets: payment of benefits and payment of plan expenses. Using forfeitures to satisfy the employer's

6

contribution obligations – obligations the employer assumed independently – fits neither carve-out. Using them to offset plan expenses does.  The Plan's own anti-diversion provisions counsel in favor of Wright's reading, not JPMorgan's.

### D. At Minimum, Ambiguity Must Be Resolved Against JPMorgan at the Pleading Stage.

Even if this Court finds the plan provisions ambiguous, that ambiguity cannot be resolved on a 12(b)(6) motion. *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1008–09 (9th Cir. 2014) ("If the language of the contract is susceptible to more than one reasonable interpretation, an ambiguity exists, and we cannot resolve the dispute on a motion to dismiss."); *see also Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1015 (9th Cir. 2012) (noting that if a contract is "fairly susceptible of either one of the two interpretations contended for, extrinsic evidence... is admissible," precluding resolution on the pleadings). The district court resolved it against the non-movant.  That was reversible error regardless of which interpretation ultimately prevails.

## II. JPMORGAN ACTED AS A FIDUCIARY WHEN IT CHOSE HOW TO ALLOCATE FORFEITED PLAN ASSETS, AND ERISA'S DUTIES GOVERNED THAT CHOICE.

### A. The Fiduciary Character of the Forfeiture Allocation Decision Is Conceded.

The DOL expressly concedes that "[t]he Plan Administrator here acted as a fiduciary when it allocated forfeitures under Section 4.6 of the Plan." DOL Br. at 11.  JPMorgan tries to evade this reality by emphasizing that *plan design* is a

7

"quintessential settlor function," AB at 19, but it does not – and cannot – deny that choosing how to deploy existing plan assets is an exercise of discretionary control. This concession is important: if the choice is fiduciary, the choice must satisfy ERISA's loyalty and prudence standards.

That the DOL concedes the fiduciary character of the allocation decision also implicitly acknowledges that Section 4.6 confers discretion. If the Plan gave the fiduciary no choice – as JPMorgan claims – there would be no fiduciary act to analyze. The DOL's entire analytical framework depends on a discretionary decision existing.

### B. The DOL's Settlor Argument Conflates Two Separate Decisions.

The DOL argues that because Section 6.9's expense-assumption decision is a "settlor" function, using forfeitures for participant expenses requires a prior settlor decision that no fiduciary can make. DOL Br. at 15–16. This conflates two distinct steps. Whether the Bank assumes expenses is one question. How the fiduciary allocates forfeitures once those expenses are assumed is another. ERISA's duties attach to the second step even if the DOL's characterization of the first were correct.

Moreover, Section 6.9's grant of ongoing discretion to "elect" whether to pay expenses is operational administration, not one-time plan design. ERISA's fiduciary duties apply "to the extent" a person exercises discretionary authority

8

over plan administration or plan assets, and the settlor/fiduciary line turns on whether the challenged act is plan "form or structure" versus "administration of the plan's assets." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999); *Hutchins v. HP Inc.*, 737 F.Supp.3d 851, 856 (N.D. Cal. 2024) ("*Hutchins I*") (quoting *Hughes Aircraft* and applying that distinction). JPMorgan cites *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011), but *Loomis* addressed whether an employer could be compelled to contribute *additional* money to a plan – a demand the court rightly characterized as a plan-design issue. *Id*. at 671. That is not this case. The forfeitures here already exist inside the trust. Wright is not asking the fiduciary to compel additional contributions. He is asking how existing trust assets should be allocated. That is fiduciary administration, not plan design.

### C.     The Plan Here Is Materially Different from Hutchins II.

JPMorgan relies on *Hutchins v. HP Inc.*, 767 F.Supp.3d 912, 922 (N.D. Cal. 2025) ("*Hutchins II*"), which found the expense-assumption decision was settlor-like because HP's plan contained explicit language reserving "complete and unfettered discretion" over that choice and stating that the plan "shall not be construed to require the Participating Companies to pay any portion of the expense of the Plan." JPMorgan's Plan contains no such reservation. Section 6.9 says the Bank "may at its discretion elect to pay" expenses – a permissive grant, not an exclusive reservation. The difference in plan language is dispositive. *Hutchins II*

9

is also distinguishable because it treated HP's expense-assumption decision as settlor-like based on plan language expressly reserving "complete and unfettered discretion" to the participating companies. Here, by contrast, the Bank's discretion is embedded in ongoing plan administration. The Supreme Court draws the line between plan design decisions (settlor) and "administration of the plan's assets" (fiduciary). *Hughes Aircraft*, 525 U.S. at 444.

## III. TAX REGULATIONS AND THE DOL'S VIEWS DO NOT IMMUNIZE JPMORGAN FROM ERISA LIABILITY.

### A. The Treasury Regulation JPMorgan Relies On Does Not Apply to This Plan.

Treasury Regulation section 1.401-7(a) – JPMorgan's primary regulatory citation – applies by its own terms to "pension plans" providing "definitely determinable benefits." This is a defined contribution profit-sharing plan. Rev. Rul. 71-313 expressly states that § 1.401-7 "does not extend to profit-sharing plans." *Hutchins I* reached the same conclusion: "Plaintiff is correct that 26 C.F.R. § 1.401-7(a) does not apply to the Plan." *Hutchins I*, 737 F.Supp.3d at 859. The foundational regulatory premise of JPMorgan's defense does not apply to this case.

The 2023 proposed Treasury regulations confirm that forfeitures "may" be used to reduce employer contributions, pay plan administrative expenses, or increase participant benefits. 88 Fed. Reg. 12282 (Feb. 27, 2023). The word "may"

does not mandate any single use.  And proposed regulations have no legal force.

*Perez-Cruet*, 2024 WL 2702207, at *7.

    **B.**    ***Fifth Third Bancorp* Forecloses the "Regulatory Approval Equals ERISA Compliance" Argument.**

In *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), the Supreme

Court held that even where ERISA expressly exempts certain conduct and

Treasury regulations confirm the exemption, fiduciaries remain bound by their

duties of loyalty and prudence. "The duty of prudence trumps the instructions of a

plan document, such as an instruction to invest exclusively in employer stock even

if financial goals demand the contrary." *Id*. at 421.  If an express ERISA exemption

backed by implementing regulations does not insulate fiduciaries from scrutiny,

pre-ERISA tax qualification rules certainly cannot.  The structure of JPMorgan's

argument – "regulations permit this, therefore ERISA fiduciary duties cannot

prohibit it" – was explicitly rejected.

    **C.**    **The Chamber's Section 514(d) Argument Fails.**

The Chamber raises a new argument that ERISA § 514(d) shields JPMorgan

because its conduct was "consistent with" Treasury regulations. Chamber Br. 15–

18.  This argument was never raised below and should not be entertained for the

first time on appeal.  In any event, section 514(d) is a savings clause, not an

immunity provision.  It provides that ERISA does not "alter, amend, modify,

invalidate, impair, or supersede" any federal law. 29 U.S.C. § 1144(d).  That

11

language ensures ERISA and the IRC coexist – it does not establish that compliance with tax-qualification rules excuses fiduciary misconduct. Nothing about Wright's theory alters, amends, or supersedes the Treasury regulations. Plans may still be designed to use forfeitures for contributions. The question is whether a fiduciary exercising discretion over plan assets must act with loyalty and prudence – and Treasury regulations say nothing about that. *McManus v. Clorox Co.,* 2025 WL 732087, at *3–4 (N.D. Cal. Mar. 3, 2025).

### D. The DOL's View Is Not Binding.

Under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 385 (2024), agency interpretations of statutes are not entitled to deference. The DOL's position here is entitled to consideration, not authority. And on the merits, the DOL's central premise – that Wright's theory asserts a categorical rule – is mistaken, for the reasons explained below. While JPMorgan cites the DOL's position as evidence of "decades of precedent," there is not a single published circuit court decision holding that an ERISA fiduciary has a categorical right to use forfeitures for employer contributions where the plan affords discretion to do otherwise. Multiple district courts have rejected the DOL's position. *McManus*, 2025 WL 732087, at *4; *Perez-Cruet*, 2024 WL 2702207, at *2–3; *Rodriguez*, 744 F.Supp.3d at 944; *Parker v. Tenneco, Inc.*, 2025 WL 1173011, at *6 (E.D. Mich. Apr. 22, 2025); *Buescher v. N. Am. Lighting, Inc.*, 791 F.Supp.3d 873, 890–91 (C.D. Ill.

2025); *Heet v. Nat'l Med. Care Inc.*, 2026 WL 353317, at *5–6 (D. Mass. Feb. 9, 2026); *Russell v. Ill. Tool Works Inc.*, 2026 WL 332662, at *5–6 (N.D. Ill. Feb. 9, 2026).

## IV. THE COMPLAINT PLAUSIBLY ALLEGES BREACH OF THE DUTIES OF LOYALTY AND PRUDENCE.

### A. *Anderson v. Intel* Is Under Active Supreme Court Review.

JPMorgan relies heavily on *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015 (9th Cir. 2025), for both the loyalty and prudence standards. On January 16, 2026, the Supreme Court granted certiorari. *Anderson v. Intel Corp. Inv.*, No. 25-498, 2026 WL 120679, at *1 (U.S. Jan. 16, 2026). The petition specifically asks the Court to address whether pleading a breach of ERISA's duty of prudence "requires alleging a 'meaningful benchmark,'" arguing that the Ninth Circuit improperly imposed a categorical pleading rule that is inconsistent with the "context specific" inquiry required by *Fifth Third Bancorp*. *Anderson* Pet. for Cert., 2025 WL 2993964, at *i, *1. This Court should apply *Fifth Third Bancorp*'s context-specific standard directly rather than anchor its analysis to a circuit precedent under active Supreme Court review for the precise error JPMorgan asks this Court to repeat.

### B. The Complaint Plausibly Alleges Breach of the Duty of Loyalty.

ERISA requires fiduciaries to act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1)(A). As the Supreme Court has explained, ERISA's fiduciary standards specifically "insulate the trust from the employer's interest":

13

> Except in circumstances involving excess contributions
> or termination of the trust, "the assets of a plan shall
> never inure to the benefit of any employer and shall be
> held for the exclusive purposes of providing benefits to
> participants in the plan and their beneficiaries and
> defraying reasonable expenses of administering the
> plan."

*N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 332–333 (1981) (quoting 29 U.S.C. § 1103(c)(1)). And "[w]hen it is 'possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries.'" *Howard v. Shay*, 100 F.3d 1484, 1488–89 (9th Cir. 1996) (quoting *Leigh v. Engle,* 727 F.2d 113, 125–26 (7th Cir. 1984)).

The Complaint does not allege a theoretical conflict. It alleges that JPMorgan, year after year, chose the option that served its own financial interest – reducing its mandatory contribution obligations – without considering whether the alternative would better serve participants. ER-281–82 (Compl. ¶¶ 33–34). Forfeiture amounts were substantial: $9.2 million (2020); $7.5 million (2021); $13.0 million (2022); $15.0 million (2023). Every dollar went to employer contribution relief. None went to participant expense reduction. This is not a case

14

about potential self-dealing – it is a case about an unbroken pattern of actual self-dealing, repeated across multiple plan years, with the plan's own terms providing an equally authorized alternative.

JPMorgan responds that forfeitures, used as employer contributions, still benefit participants because those contributions go into participant accounts. AB at 7.  But the relevant standard is "solely" in participants' interest – not "partially" or "incidentally."  And the argument is implicitly an admission: JPMorgan, even in a litigation posture, cannot articulate circumstances in which using forfeitures to reduce participant-borne expenses would be the better choice.  That inability underscores, rather than refutes, the allegation that no such consideration ever occurred.

### C.    The Complaint Plausibly Alleges Breach of the Duty of Prudence.

The Complaint alleges that JPMorgan "failed to engage in a reasoned and impartial decision making process in deciding to use the forfeited funds in the Plan to reduce the Company's own contribution expenses" and "failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors." ER-281-282 (Compl. ¶ 34). These are process allegations – not mere outcome complaints.

Wright is not required to plead the details of JPMorgan's internal deliberations, since "plaintiffs typically lack extensive information regarding the

fiduciary's methods and actual knowledge because those details tend to be in the sole possession of [that fiduciary]." *Anderson*, 137 F.4th at 1025 (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (alteration in original)). "It is enough to allege facts that support an inference that the defendant failed to conduct an adequate inquiry." *McManus*, 2025 WL 732087, at *5.

The plausibility of that inference is reinforced by context: a structural conflict of interest; an unbroken four-year pattern producing identical employer-favoring outcomes; large and growing dollar amounts; and the availability of an equally authorized plan-expense use that consistently went unchosen. *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) (fiduciary must "consider all relevant circumstances"). The circumstances prevailing at the time included JPMorgan's self-evident financial incentive to prefer its own contribution obligations. Those circumstances make the inference of process failure not just plausible but compelling.

### D. The DOL's "Funding Shortfall" Argument Is Speculative and Self-Defeating.

The DOL hypothesizes that a fiduciary using forfeitures for plan expenses might face a "funding shortfall" if JPMorgan refused to pay its required contributions, forcing litigation using plan assets. DOL Br. at 16–18. This argument fails in three ways.

16

First, it is pure speculation. Nothing in the record suggests JPMorgan's contribution obligations were ever at risk. Resolving such factual hypotheticals against the plaintiff at the pleading stage is exactly what *Twombly* and *Iqbal* prohibit.

Second, if the DOL's scenario were realistic – that JPMorgan might fail to pay required contributions unless backstopped by plan forfeitures – that would deepen rather than resolve the loyalty concern. It would mean JPMorgan was using trust assets to guarantee its own performance of mandatory employer obligations. A fiduciary who allocates plan assets to cover the employer's potential future non-performance is acting in the employer's interest, not participants'. The DOL's speculation actually strengthens the Complaint.

Third, the argument proves the wrong point. It confirms that competing considerations exist – and that a prudent fiduciary should weigh them. The Complaint's allegation is precisely that JPMorgan did no such weighing. If anything, the DOL has identified additional evidence supporting the prudence claim, not a basis for dismissing it.

### E. Wright Does Not Assert a Categorical Rule; JPMorgan Does.

The district court faulted Wright for proposing a categorical rule that forfeitures must always fund expenses. The Complaint says no such thing. It alleges JPMorgan "failed to consider whether Participants would be better served

by another use of these Plan assets after considering all relevant factors." ER-281-282 (Compl. ¶ 34). That is a process allegation. There may well be circumstances – perhaps when an employer's financial stability is genuinely at risk – where using forfeitures for employer contributions would survive fiduciary scrutiny. Wright's theory does not preclude that.

JPMorgan is the party asserting a categorical rule: that using forfeitures for employer contributions is always permissible, regardless of whether participants' interests were considered. AB at 12. The district court endorsed that rule while accusing Wright of proposing one. This is precisely the analytical error *Fifth Third Bancorp*, 573 U.S. at 425, and *Hughes v. Northwestern*, 595 U.S. at 177, forbid.

## V. THE MONITORING CLAIM SURVIVES WITH THE UNDERLYING BREACH CLAIMS.

JPMorgan concedes this claim is derivative. AB at 37. Because the Complaint plausibly alleges underlying breaches, dismissal of the monitoring claim was error. *Howard v. Shay*, 100 F.3d at 1488; 29 C.F.R. § 2509.75-8, FR-17.

## VI. THE COMPLAINT PLAUSIBLY ALLEGES A PROHIBITED TRANSACTION.

### A. Section 1106(b)(1)'s "Deal With" Language Does Not Require a Formal Transaction.

Section 1106(a) prohibits "transaction[s]" between the plan and parties in interest. 29 U.S.C. § 1106(a). Section 1106(b)(1) prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."

18

29 U.S.C. § 1106(b)(1). Congress used "transaction" in Section 1106(a) and "deal" in Section 1106(b)(1). These are different words, and the difference is intentional. *Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972)).

JPMorgan argues that Section 1106's headings – "Prohibited Transactions" and "Transactions between plan and fiduciary" – confirm a transaction requirement across all subsections. AB at 34–35. But this argument cuts the other way: if the heading covers Section 1106(b)(1)'s "dealing" prohibition, then self-interested dealing is itself a "transaction" within the statutory scheme. Either reading forecloses JPMorgan's no-transaction defense. *Cunningham v. Cornell Univ.*, 604 U.S. 693 (2025), addressed Section 1106(a)(1)(C) – where "transaction" appears explicitly – and said nothing about Section 1106(b)(1)'s broader "dealing" prohibition.

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004), does not bar this claim. *Oregon Metallurgical* addressed the employer's passive maintenance of existing employer stock holdings consistent with plan terms. *Id.* at 1101. Here, the fiduciary made an affirmative, repeated choice to direct forfeited

19

plan assets toward the employer's benefit. That is active self-dealing, not passive

compliance. *Rodriguez*, 744 F.Supp.3d at 949; *Perez-Cruet*, 2024 WL 2702207, at

*5–6.

> **B.** **Alternatively, the Conduct Constitutes a Prohibited "Use" Under Section 1106(a)(1)(D).**

Even applying a transaction requirement, directing forfeitures to satisfy

JPMorgan's own contribution obligations constitutes "use by or for the benefit of a

party in interest" under Section 1106(a)(1)(D). JPMorgan is a party in interest as

plan sponsor. 29 U.S.C. § 1002(14). *Rodriguez*, 744 F.Supp.3d at 948–49; *Randall*

*ex rel. Wells Fargo & Co. 401(k) Plan v. GreatBanc Tr. Co.*, 2024 WL 713997, at

*6 (D. Minn. Feb. 21, 2024).

## VII. THE ANTI-INUREMENT CLAIM IS VIABLE BECAUSE HUGHES AIRCRAFT DOES NOT APPLY TO DEFINED CONTRIBUTION PLANS.

JPMorgan relies on *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999),

to argue that the anti-inurement provision is satisfied whenever plan assets are used

to pay "pension benefits to plan participants." AB at 39. But *Hughes Aircraft*

turned on the fundamental difference between defined benefit and defined

contribution plans – and the Court said so explicitly: "To understand why

respondents have no interest in the Plan's surplus, it is essential to recognize the

difference between defined contribution plans and defined benefit plans." *Id.* at

438–39.  In a defined benefit plan, "no plan member has a claim to any particular asset that composes a part of the plan's general asset pool." *Id*. at 439.

That premise does not hold here.  In this defined contribution plan, each participant has an individual account. 29 U.S.C. § 1002(34).  When forfeitures that could have reduced administrative charges to those accounts are instead used to satisfy JPMorgan's contribution obligations, each participant's account is measurably smaller.  That diminishment – the loss of the potential expense credit – is a financial benefit to the employer at the direct expense of participant accounts, violating 29 U.S.C. § 1103(c)(1).

The Plan's own terms confirm the point.  Section 14.1 provides that trust assets may not "be used for or diverted to purposes other than for the exclusive benefit of Participants" except for "taxes, administration expenses or fees." ER-97.  Using forfeitures to subsidize employer contribution obligations is a "diversion" to the employer – precisely what 29 U.S.C. § 1103(c) and Section 14.1 of the Plan prohibit. *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22-23 (2004).

## VIII.  LEAVE TO AMEND SHOULD BE GRANTED ON REMAND.

Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave" to amend "when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The district court found amendment futile because Wright's legal theory was

21

"novel" and "unsupported by present law." ER-16. But whether the theory is viable is the very question on appeal. The futility finding is circular. Because *Fifth Third Bancorp* instructs that fiduciary duty analysis is "context specific," denying amendment before discovery deprives Wright of the ability to refine process-based allegations regarding JPMorgan's specific internal deliberations.

This was Wright's first complaint. No prior amendment had been attempted. No bad faith. No undue delay. No prejudice to JPMorgan from allowing amendment. Other courts in materially identical cases have granted leave to amend, recognizing that plaintiffs may be able to allege "more particularized facts or special circumstances." *Hutchins I,* 737 F.Supp.3d at 864. The *McManus* court granted leave to amend after its initial dismissal, and the amended complaint survived a second motion to dismiss. *McManus*, 2025 WL 732087, at *1, *6. On remand, Wright should be permitted to allege specific facts about JPMorgan's decision-making process – whether any fiduciary committee considered using forfeitures for expenses, what deliberative process was employed, and what factors were weighed. These are the process-based allegations that *Fifth Third Bancorp*'s context-specific standard demands and that the district court prematurely foreclosed.

## IX.    THE ARGUMENTS OF THE AMICI SHOULD BE REJECTED.

The Chamber of Commerce's brief largely repeats JPMorgan's Tax Code and Treasury regulation arguments, which fail for the reasons set forth above.  To the extent the Chamber raises independent policy concerns – that Wright's theory would create uncertainty for plan sponsors – it overstates the consequence. Wright does not propose a categorical rule.  He proposes that ERISA's fiduciary framework, which already governs trillions of dollars in plan assets, also governs the discretionary allocation of forfeitures.  The Chamber's suggestion that employers could avoid this obligation by rewriting plans to prohibit expense uses of forfeitures actually proves the point: it illustrates the distinction between plan design (a settlor function) and control over plan assets (a fiduciary function) that is inherent in ERISA's structure.

The DOL's arguments have been addressed in the relevant sections above. To the extent the DOL characterizes Wright as asserting a categorical rule, that characterization is wrong for the reasons explained in Section IV.E.  To the extent the DOL relies on the "funding shortfall" theory, that theory fails for the reasons explained in Section IV.D.

### CONCLUSION

The district court's order dismissing all claims with prejudice should be reversed, and the case should be remanded for further proceedings.

Dated: February 23, 2026

**HAFFNER LAW PC**

/s/ Alfredo Torrijos
Joshua H. Haffner
Alfredo Torrijos
Vahan Mikayelyan

**SETAREH LAW GROUP**
Shaun C. Setareh
Thomas A. Segal

*Attorneys for Plaintiff-Appellant*
*Daniel J. Wright*

24

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

Pursuant to Federal Rules of Appellate Procedure Rule 32 and Circuit Rule 32-1, I certify that this brief complies with the type-volume limitation set forth in Circuit Rule 32-1(a) as this brief contains a total of 4,958 words, not including parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure Rule. This brief complies with the typeface requirements of Federal Rules of Appellate Procedure Rule 32(a)(5) and the type style requirements of Federal Rules of Appellate Procedure Rule 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  February 23, 2026                     _____/s/ Alfredo Torrijos_____

                                                  Alfredo Torrijos, Esq.
                                                   Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2026, I electronically filed the

foregoing document(s) described as:

APPELLANT'S REPLY BRIEF

with the clerk of the Court for the United States Court of Appeals for the

Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.


Dated: February 23, 2026                    /s/ Alfredo Torrijos
                                        Alfredo Torrijos, Esq.
                                        Attorney for Plaintiff-Appellant